UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                              Criminal No. 14-277(2)  JNE/JJK

        Plaintiff,

v.                                                     **REPORT AND RECOMMENDATION**

Catarino Cruz, Jr.,

        Defendant.

    Tristam W. Hunt, Esq., and Erin S. Tomasic, Esq., Assistant United States Attorneys, District of Kansas, for the plaintiff, United States of America;

    Bruce Nestor, Esq., for defendant Catarino Cruz, Jr.

This action came on for hearing before the Court, Magistrate Judge Jeffrey J. Keyes, on March 18, 2015, at the U.S. Courthouse, 316 North Robert Street, St. Paul, MN  55101.  The Court issued an Order on Motions dated March 24, 2015, reserving Defendant's motion to suppress evidence obtained in connection with his warrantless arrest for submission to the District Court on Report and Recommendation.

Based upon the file and documents contained therein, along with the motions and memoranda of counsel, the testimony of witnesses, and a demonstrative exhibit received at the hearing, this Court makes the following:

**FINDINGS**

St. Paul Police Sgt. James Labarre positioned his vehicle in a parking lot across the street and to the north of a St. Paul SuperAmerica gas station during the evening of January 23, 2013, for the purpose of conducting surveillance of the SuperAmerica parking lot area. Sgt. Labarre was alone, wearing plain clothes, in an unmarked car, and working in an undercover capacity under assignment with the West District Force Unit. The area was known to police as a location where drug trafficking took place and was considered a "hot spot" based on recent citizen complaints and drug-related arrests in the area. Sgt. Labarre went to the SuperAmerica location at the suggestion of St. Paul Police Sgt. Steve Anderson, another Force Unit member.

The SuperAmerica facility consists of a convenience store located at the back of the lot from the street, and two gas pump islands under a canopy between the store and the street, on the west side of the lot. The east side of the lot was bordered by a retaining wall and several parking spaces. Lot entrances were on streets running along the west and north sides of the lot. (Hrg. Ex. 1.)[1]

At approximately 8:30 p.m. Sgt. Labarre noted a tan Lincoln automobile parked facing the retaining wall on the east side of the SuperAmerica lot. The

---

[1] Hrg. Ex. 1 is an overhead photograph of the SuperAmerica complex. The top of the photo is north. The photo was taken off-season and in daylight, and therefore shows fully leaved trees, and no signs of winter. The exhibit was offered and received without objection for demonstrative purposes.

vehicle was already parked in the lot when the Sgt. Labarre took his surveillance position, and it was the only car parked along the retaining wall. The parking lot area was lighted, and from a distance of approximately 150 feet Sgt. Labarre was able to observe a lone male seated in the car.  After Sgt. Labarre had watched the Lincoln for approximately five minutes, and seeing no one get in or out of the vehicle, the officer suspected that a drug transaction may be in the works, and he was therefore prompted to contact other Force Unit officers he knew to be in the vicinity.  Sgt. Steve Anderson replied that he was nearby and on the way to the SuperAmerica, in the company of St. Paul Officers and Force Unit members Etienne, Larson, and Storey.

     Sgt. Labarre continued watching the lot and soon observed a red Pontiac Aztec arrive and stop near a gas pump on the south end of the canopy.  Four males got out of the Aztec and three of them went into the convenience store.  The fourth male, described as an Hispanic person wearing a tan jacket with a hood, went to the passenger side of the tan Lincoln, opened the front door, and took a seat in the vehicle.  Shortly thereafter, Sgt. Labarre saw the dome light come on inside the Lincoln and the occupants appeared to be bending over and looking down towards the center of the front seat.  Sgt. Labarre believed the actions to be consistent with a drug transaction, and he made a second contact with Sgt. Anderson to advise him to move in on the vehicle.

Sgt. Anderson and the other officers then arrived and stopped their unmarked SUV between the tan Lincoln and the red Aztec, but much closer to the Lincoln. The police vehicle's position would have inhibited, but not blocked the Lincoln from leaving the lot. Sgt. Anderson was driving the SUV and Officer Etienne was seated behind him. Officers Larson and Storey were seated on the passenger side. The SUV was parked at an angle behind the Lincoln in a manner that allowed the officers on the driver's side to proceed directly to the Lincoln, and the passenger side officers could proceed directly to the red Aztec. All of the officers were wearing raid jackets which had the word "Police" written on them in large yellow letters.

Officer Etienne went to the driver's side of the Lincoln and Sgt. Anderson went to the passenger side of the vehicle. Officer Etienne could not see the driver's right side or right hand and suspected that a drug deal may be in progress. Therefore, for safety purposes, the officer opened the driver's door and asked the driver, identified as co-defendant Benjamin Darlow, to unbuckle his seatbelt and step outside the vehicle. Meanwhile, Officer Etienne heard Sgt. Anderson state that he had seen the driver hand money to the passenger. The driver complied with Officer Etienne's instructions, at which time the officer saw twenty dollar bills and some bags on the front seat floorboard. The officer now believed that a drug transaction was taking place and proceeded to conduct a pat search on Darlow. The officer then observed additional clear plastic bags

containing a white substance in the map pocket of the open car door. Darlow was arrested and handcuffed on suspicion of involvement in a drug transaction. Meanwhile, Sgt. Anderson had tapped on the passenger side window to speak with the passenger, identified as Defendant Catarino Cruz, Jr. The officer asked Cruz why he had been handed money, to which Cruz denied receiving anything from Darlow, despite having been seen taking the money. After Officer Etienne reported that he had found drugs, Sgt. Anderson instructed Cruz to get out of the vehicle and he was arrested, handcuffed, and searched. Officers found significant amounts of cash in two of Cruz's pockets and in his wallet. No drugs or weapons were found on him. Other officers conducted a search of the Lincoln and found a handgun in the area where the driver's right hand had been located. Drugs, money, and a scale were also seized from the vehicle.

**CONCLUSIONS**

**Investigatory Stop.** Police contact with Defendant Catarino Cruz on January 23, 2013 at a St. Paul, Minnesota SuperAmerica was the result of officers approaching a vehicle that was already parked and was not a result of a vehicle stop. The investigatory stop was lawfully based upon reasonable suspicion that criminal activity was in progress; Defendant's ensuing arrest was lawfully based upon evidence establishing probable cause to believe Defendant was engaged in criminal activity; the search of Defendant's person was a lawful

search incident to arrest; and the search of the vehicle was proper under the automobile exception to the warrant requirement.

Defendant's motion to suppress is based wholly on the contention that officers stopped their vehicle in a way that prevented the Lincoln from leaving, and that the Defendant had been seized by law enforcement officers without reasonable suspicion of criminal activity from the time the car was blocked in and officers approached each side of the Lincoln. The government asserts that the occupants could not have been seized when the police vehicle arrived because they were not aware that officers were present, and Defendant could not have reasonably perceived himself to be seized prior to the time officers rapped on the vehicle windows.

An investigatory stop is a seizure within the meaning of the Fourth Amendment and therefore must be supported by reasonable suspicion or probable cause. *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008) (citing *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001) and *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). A law enforcement officer has reasonable suspicion when the officer is aware of "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that crime is being committed." *Id.* (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)). When considering if the requisite degree of suspicion is present, the court considers whether the facts collectively establish reasonable

suspicion and not whether each particular fact establishes reasonable suspicion. *United States v. Campbell*, 843 F.2d 1089, 1093 (8th Cir. 1988). Also, the court may consider any added meaning that certain conduct may convey to officers who are experienced and trained in observation and crime detection. *Id.*; see also *United States v. Noonan*, 745 F.3d 934, 935-36 (8th Cir. 2014) (noting that the totality of circumstances provides the basis for an officer's reasonable suspicion to make an investigative stop.) Even if there are innocuous explanations for the circumstances and observations leading up to an investigative stop, *i.e.*, Terry stop,[2] "*Terry* accepts the risk that officers may stop innocent people." *United States v. Cotton*, _ F.3d _, 2015 WL __ (8th Cir. April 6, 2015) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000)).

An officer's approach towards a vehicle to determine whether the car is occupied, and if so, to speak with the occupants, is not a Fourth Amendment violation. *See United States v. Barry*, 394 F.3d 1070, 1074-75 (8th Cir. 2005). In the absence of evidence that the contact between the officers and the Defendant was somehow threatening or offensive, as represented by actions such as a police display of weapons, physical touching of the defendant, or the presence of several officers, police contact of the sort involved here does not constitute a seizure for Fourth Amendment purposes. *Id.* at 1075, (citing *United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980)). In this case there is no evidence of

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

conduct by officers that could reasonably be construed as threatening, coercive, or otherwise indicative of a seizure of Defendant's person prior to the time the officers rapped on the vehicle windows to get the occupants' attention. Defendant in this case was not seized until Sgt. Anderson asked him to get out of the Lincoln, at which time the officer had reasonable suspicion to investigate a crime because the Defendant and driver had been observed hunched over towards the center of the car seat, bags containing white powder were seen in plain view, and Defendant had denied that he had been handed money after Sgt. Anderson had witnessed the money transfer.  Furthermore, Defendant cannot reasonably assert that he was seized for Fourth Amendment purposes based upon circumstances of which he was unaware.[3]  Seizure is characterized by threatening or offensive conduct by officers which could be neither threatening nor offensive if unknown, and in any event, there was not a display of weapons, physical contact, large number of officers, or other circumstances that would indicate a threatening environment.

---

[3] Also, Defendant's position is factually flawed.  Although there was testimony that the police vehicle stopped behind the Lincoln, the evidence did not establish that the Lincoln was blocked in, with no possible method of exiting, and Sgt. Anderson, the driver of the police vehicle, stated that the Lincoln was free to leave the scene and could have driven away.  Moreover, Defendant Cruz was in the passenger seat of a parked vehicle and there were no objectively evident circumstances that would have precluded him from getting out of the Lincoln and returning to the red Aztec, going into the convenience store, or going elsewhere, when the police vehicle first arrived, other than his own inattentiveness or preoccupation.

**Arrest and Searches.**  Defendant's arrest was based upon evidence sufficient to establish probable cause for his arrest and the seizure of his person, and therefore was not made in violation of the Defendant's constitutional rights. Probable cause exists when the totality of circumstances warrants a belief that a crime was committed and the person being seized committed the crime.  *United Houston*, 548 F.3d at 1153.  Here, officers observed the Defendant and the vehicle driver hunched over the front seat center or console area when they approached the Lincoln.  The circumstances were sufficient to establish reasonable suspicion for an investigatory stop, and the evidence and circumstances clearly became probable cause when suspected drugs and money were seen in plain view in the vehicle, and Defendant denied a transfer of cash that had been observed by an officer.  Defendant Cruz's arrest was not an unlawful seizure of his person and evidence obtained by a subsequent search of Defendant's person was obtained by lawful search incident to arrest. Finally, the search of the Lincoln was permissible under the automobile exception to the warrant requirement under which officers may search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity.  *United States v. Davis*, 569 F.3d 813, 817 (8th Cir. 2009).  Ample evidence to establish probable cause to search existed as a result of the officer's plain view observations of conduct by the Lincoln occupants which appeared to

be drug dealing, and the plain view discovery of money and apparent drugs in the vehicle. Suppression of evidence based upon unlawful arrest is not required.

Based upon the foregoing Findings and Conclusions of Law, the Magistrate Judge makes the following:

## RECOMMENDATION

It is **Hereby Recommended** that Defendant Catarino Cruz, Jr.'s Motion to Suppress Warrantless Arrest be **denied** (Doc. No. 68).

Dated: April 8, 2015

s/*Jeffrey J. Keyes*
Jeffrey J. Keyes
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 22, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. Any response to the objecting party's brief shall be served and filed by **May 6, 2015**. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.